**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| BRIAN WILSON<br>1018 Deacon Circle<br>Columbus, Ohio 43214, )<br><br>Plaintiff, )<br><br>v. )<br><br>OHIOHEALTH CORPORATION<br>OhioHealth Corporation 3430 OhioHealth<br>Parkway Columbus, Ohio 43202, )<br><br>**Serve Also:** )<br><br>OHIOHEALTH CORPORATION<br>c/o Terri W. Meldrum, Esq<br>Registered Agent<br>3430 OhioHealth Parkway Columbus,<br>Ohio 4320, )<br><br>Defendant. ) | CASE NO. +++<br><br>JUDGE: +++<br><br>**COMPLAINT FOR DAMAGES<br>AND INJUNCTIVE RELIEF**<br><br>**JURY DEMAND ENDORSED<br>HEREIN** |

Plaintiff, Brian Wilson, by and through undersigned counsel, as his Complaint against

Defendant OhioHealth Corporation ("OhioHealth") states and avers the following:

**PARTIES, JURISDICTION, AND VENUE**

1.     Wilson is a resident of the City of Columbus, Franklin County, Ohio.

2.     At all times herein, Wilson was acting in the course and scope of his employment.

3.     OhioHealth is a domestic corporation for non-profit that does business at OhioHealth

Corporation 3430 OhioHealth Parkway Columbus, Ohio 43202.

4.     OhioHealth is and, at all times herein, was an employer within the meaning of R.C. § 4112.01

*et seq.*

5. Mollenkamp is a resident of the State of Ohio.

6. Justice is a resident of the State of Ohio.

7. Griffith is a resident of the State of Ohio.

8. At all times herein, Mollenkamp was acting in the course and scope of her employment.

9. At all times herein, Justice was acting in the course and scope of his employment.

10. At all times herein, Griffith was acting in the course and scope of her employment.

11. Mollenkamp is, and at all times hereinafter mentioned, was an individual who aided, abetted, and incited the discriminatory and/or retaliatory acts described hereafter in violation of R.C. § 4112.01 et seq.

12. Justice is, and at all times hereinafter mentioned, was an individual who aided, abetted, and incited the discriminatory and/or retaliatory acts described hereafter in violation of R.C. § 4112.01 et seq.

13. Griffith is, and at all times hereinafter mentioned, was an individual who aided, abetted, and incited the discriminatory and/or retaliatory acts described hereafter in violation of R.C. § 4112.01 et seq.

14. At all times herein, Mollenkamp was acting in the course and scope of her employment.

15. At all times herein, Justice was acting in the course and scope of her employment.

16. At all times herein, Griffith was acting in the course and scope of her employment.

17. OhioHealth hires citizens of the State of Ohio, contracts with companies in Ohio, and owns or rents property in Ohio. As such, the exercise of personal jurisdiction over OhioHealth comports with due process.

18. The claims herein arose from or relates to the contacts of OhioHealth with Ohio residents, thereby conferring specific jurisdiction over OhioHealth.

19. All of the material events alleged in this Complaint occurred in Franklin County.

20. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Wilson is alleging a Federal Law Claim under Title VII of the Civil Rights Act of 1964 ("Title VII").

21. All material events alleged in this Complaint occurred in Franklin County, Ohio.

22. This Court has supplemental jurisdiction over Wilson's state law claims pursuant to 28 U.S.C. § 1367 as Wilson's state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

23. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

24. Within 300 days of the conduct alleged below, Wilson filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2024-01608 against OhioHealth ("Wilson EEOC Charge").

25. On or about October 31, 2024, the EEOC issued a Notice of Right to Sue letter to Wilson regarding the Charges of Discrimination brought by Wilson against OhioHealth in the Wilson EEOC Charge.

26. Wilson received his Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1).

27. Wilson has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

28. Wilson has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

### **FACTS**

29. Wilson is a former employee of OhioHealth.

30. Wilson began working for OhioHealth on or about February 5, 2023.

31. Wilson worked for OhioHealth as a Patient Support Assistant.

32. OhioHealth was, at all times hereinafter mentioned, engaged in commerce or in an industry or activity affecting commerce and employed 50 or more employees for each working day during each of 20 or more calendar work weeks in the current or preceding calendar year and therefore is an employer as defined in 29 U.S.C § 2611(4).

33. Wilson is a member of a protected class on the basis of his sexuality; Wilson is gay.

34. Throughout Brian's employment with OhioHealth, Alivia Mollenkamp and Jerry Justice repeatedly harassed him on the basis of his sexuality.

35. Mollenkamp is not gay.

36. Mollenkamp is female.

37. Mollenkamp did not participate in the decision to hire Wilson.

38. Justice is not gay.

39. Justice did not participate in the decision to hire Wilson.

40. Alivia Mollenkamp was a Patient Support Assistant at OhioHealth.

41. Jerry Justice was a Registered Nurse at OhioHealth.

42. Justice displayed his anti-LGBTQ+ bigotry openly in the workplace.

43. Justice would refer to LGBTQ+ individuals as "fags" to insult and deride them.

44. Paragraphs 42 and 43 shall be collectively referred to as "Discriminatory Behavior" herein.

45. The Discriminatory Behavior was extreme.

46. The Discriminatory Behavior was outrageous.

47. The Discriminatory Behavior was beyond the bounds of decency.

48. The Discriminatory Behavior was intolerable in a civilized society.

49. The Discriminatory Behavior was severe.

50. The Discriminatory Behavior was pervasive.

51. The Discriminatory Behavior was offensive to a reasonable person.

52. The Discriminatory Behavior was offensive to Wilson.

53. On or about August 17, 2023, Wilson reported the Discriminatory Behavior to his supervisor, Logan Griffith ("First Report of Discrimination").

54. Griffith is not gay.

55. Griffith is female.

56. Griffith did not participate in the decision to hire Wilson.

57. Following the First Report of Discrimination, Griffith made no effort to discipline the harassing employees or correct the situation.

58. Griffith failed to take any action to remedy the situation in response to Wilson's First Report of Discrimination.

59. In response to Wilson's First Report of Discrimination, Wilson that she "couldn't control him," referring to Justice.

60. Wilson also asked to be transferred away from Justice during his First Report of Discrimination.

61. Griffith denied Wilson's request to be transferred away.

62. Griffith failed to take prompt remedial action to correct the Discriminatory Behavior reported by Wilson in the First Report of Discrimination.

63. Following Wilson's Report of Discrimination, and Griffith's refusal to take prompt remedial action, Justice found out about the First Report of Discrimination.

64. Justice confronted Wilson after finding out about his Report of Discrimination ("Confrontation by Justice").

65. During the Confrontation by Justice, Justice forced Wilson to explain that he was gay and took offense to Justice using the word "fag."

66. Justice became emboldened following the Confrontation by Justice.

67. Justice, along with Mollenkamp, made crass and insulting "jokes" about Wilson's sexuality for the remainder of his employment.

68. During the week of May 8, 2023, Wilson and Cecilia Kane were discussing buying Pride clothing to celebrate Pride Month in June ("Pride Month Discussion").

69. Kane was a Charge Nurse at OhioHealth.

70. When Justice overheard the Pride Month Discussion, he began taunting Wilson and Kane for wanting to participate in the Pride celebration.

71. Both Wilson and Kane reported this behavior to Griffin ("Second Report of Discrimination").

72. Griffin again took no action to discipline Justice following the Second Report of Discrimination.

73. On or about June 5, 2023, Wilson used the phrase "I finally feel normal" in conversation with a coworker that had nothing to do with Wilson's sexuality ("Coworker Conversation").

74. Justice inserted himself into the Coworker Conversation saying, "Oh, so you're finally straight?" ("Comments on Wilson's Sexuality").

75. Caught off guard by Justice's Comments on Wilson's Sexuality, Wilson asked, "Is being gay not normal?"

76. Following Wilson's response to Justice's Comments on Wilson's Sexuality, Justice told him, "Yeah, that was the whole point of me saying that."

77. Wilson reported Justice's Comments on Wilson's Sexuality and the resulting conversation to Griffith and told her that he did not want to come back to work and that he did not feel welcome ("Third Report of Discrimination").

78. In response to the Third Report of Discrimination, Griffith told Wilson, "Well, I'm sorry you feel that way" and took no action to discipline Justice.

79. On or about July 20, 2023, after receiving no solution from Griffith, Wilson contacted Charlie Erwin, for a resolution ("Fifth Report of Discrimination").

80. Erwin was a Senior Human Resources Consultant at OhioHealth.

81. After a brief back-and-forth email exchange following the Fifth Report of Discrimination, Erwin stopped responding to Wilson.

82. In or around late July or early August 2023, Wilson and Kane discussed that year's Pride event at work ("Pride Event Discussion").

83. Justice inserted himself into the Pride Event Discussion with a bigoted rant about how LGBTQ+ people "push a sexualized agenda onto children" and equated LGBTQ+ people with child sex offenders ("Bigoted Rant by Justice").

84. The Bigoted Rant by Justice was severe.

85. The Bigoted Rant by Justice was pervasive.

86. The Bigoted Rant by Justice was intolerable in a civilized society.

87. Kane reported the Bigoted Rant by Justice to Griffith ("Sixth Report of Discrimination").

88. By on or about August 17, 2023, Griffith had still not disciplined Justice or Mollenkamp.

89. Furthermore, Griffith refused to accommodate Brian's work schedule for his return to school in the fall.

90. This adjusted work schedule is colloquially called, "going causal."

91. This schedule change is routinely offered to Patient Support Assistants when they return to school.

92. Griffith accommodated Gracye Compton, Timothy Cowans, and Mollenkamp's school schedules.

93. Compton, Cowans, and Mollenkamp are all similarly situated employees to Wilson who are not members of the LGBTQ+ community.

94. Paragraphs 86 through 90 shall be collectively referred to as the "Failure to Accommodate" herein.

95. The Failure to Accommodate was discriminatory based on Wilson's sexuality.

96. The Failure to Accommodate was discriminatory based on Wilson's gender.

97. The Failure to Accommodate was retaliation for the First Report of Discrimination.

98. The Failure to Accommodate was retaliation for the Second Report of Discrimination.

99. The Failure to Accommodate was retaliation for the Third Report of Discrimination.

100. The Failure to Accommodate was retaliation for the Fourth Report of Discrimination.

101. The Failure to Accommodate was retaliation for the Fifth Report of Discrimination.

102. OhioHealth has a policy against LGBTQ+ discrimination ("LGBTQ+ Discrimination Policy").

103. OhioHealth's LGBTQ+ Discrimination Policy precludes retaliation against employees who complain about LGBTQ+ discrimination.

104. Alternatively, retaliation against employees who complain about LGBTQ+ discrimination is permitted by OhioHealth.

105. OhioHealth's LGBTQ+ Discrimination Policy precludes intimidation against employees who complain about LGBTQ+ discrimination.

106. Alternatively, intimidation against employees who complain about LGBTQ+ discrimination is permitted by OhioHealth.

107. OhioHealth's LGBTQ+ Discrimination Policy requires employees to report what they reasonably believe is a violation of the LGBTQ+ Discrimination Policy.

108. OhioHealth's LGBTQ+ Discrimination Policy precludes retaliation against employees who report a violation of the LGBTQ+ Discrimination Policy.

109. Alternatively, retaliation against employees who report a violation of the LGBTQ+ Discrimination Policy is permitted by OhioHealth.

110. OhioHealth's LGBTQ+ Discrimination Policy precludes intimidation against employees who report a violation of the LGBTQ+ Discrimination Policy.

111. Alternatively, intimidation against employees who report a violation of the LGBTQ+ Discrimination Policy is permitted by OhioHealth.

112. The conduct described in the First Report of Discrimination violates the LGBTQ+ Discrimination Policy.

113. The conduct described in the Second Report of Discrimination violates the LGBTQ+ Discrimination Policy.

114. The conduct described in the Third Report of Discrimination violates the LGBTQ+ Discrimination Policy.

115. The conduct described in the Fourth Report of Discrimination violates the LGBTQ+ Discrimination Policy.

116. The conduct described in the Fifth Report of Discrimination violates the LGBTQ+ Discrimination Policy.

117. OhioHealth has a policy to investigate reports of violations of its LGBTQ+ Discrimination Policy.

118. An investigation should include interviewing the complainant.

119. An investigation should include interviewing the subject of the complaint.

120. An investigation should include interviewing the subject of the reported discrimination.

121. An investigation should include interviewing witnesses to the reported discrimination.

122. An investigation should include getting a written statement from the complainant.

123. An investigation should include getting a written statement from the subject of the complaint.

124. An investigation should include getting a written statement from the subject of the reported discrimination.

125. In response to Wilson's First Report of Discrimination, OhioHealth did not interview Wilson.

126. In response to Wilson's First Report of Discrimination, OhioHealth did not interview Mollenkamp.

127. In response to Wilson's First Report of Discrimination, OhioHealth did not interview Justice.

128. In response to Wilson's First Report of Discrimination, OhioHealth did not interview witnesses.

129. In response to Wilson's First Report of Discrimination, OhioHealth did not get a written statement from Wilson.

130. In response to Wilson's First Report of Discrimination, OhioHealth did not get a written statement from Mollenkamp.

131. In response to Wilson's First Report of Discrimination, OhioHealth did not get a written statement from Justice.

132. In response to Wilson's First Report of Discrimination, OhioHealth did not get a written statement from witnesses.

133. OhioHealth did not investigate Wilson's First Report of Discrimination.

134. In response to Wilson's Second Report of Discrimination, OhioHealth did not interview Wilson.

135. In response to Wilson's Second Report of Discrimination, OhioHealth did not interview Justice.

136. In response to Wilson's Second Report of Discrimination, OhioHealth did not interview witnesses.

137. In response to Wilson's Second Report of Discrimination, OhioHealth did not get a written statement from Wilson.

138. In response to Wilson's Second Report of Discrimination, OhioHealth did not get a written statement from Justice.

139. In response to Wilson's Second Report of Discrimination, OhioHealth did not get a written statement from witnesses.

140. OhioHealth did not investigate Wilson's Second Report of Discrimination.

141. In response to Wilson's Third Report of Discrimination, OhioHealth did not interview Wilson.

142. In response to Wilson's Third Report of Discrimination, OhioHealth did not interview Justice.

143. In response to Wilson's Third Report of Discrimination, OhioHealth did not interview witnesses.

144. In response to Wilson's Third Report of Discrimination, OhioHealth did not get a written statement from Wilson.

145. In response to Wilson's Third Report of Discrimination, OhioHealth did not get a written statement from Justice.

146. In response to Wilson's Third Report of Discrimination, OhioHealth did not get a written statement from witnesses.

147. OhioHealth did not investigate Wilson's Third Report of Discrimination.

148. In response to Wilson's Fourth Report of Discrimination, OhioHealth did not interview Wilson.

149. In response to Wilson's Fourth Report of Discrimination, OhioHealth did not interview Justice.

150. In response to Wilson's Fourth Report of Discrimination, OhioHealth did not interview witnesses.

151. In response to Wilson's Fourth Report of Discrimination, OhioHealth did not get a written statement from Wilson.

152. In response to Wilson's Fourth Report of Discrimination, OhioHealth did not get a written statement from Justice.

153. In response to Wilson's Fourth Report of Discrimination, OhioHealth did not get a written statement from witnesses.

154. OhioHealth did not investigate Wilson's Fourth Report of Discrimination.

155. In response to Wilson's Fifth Report of Discrimination, OhioHealth did not interview Wilson.

156. In response to Wilson's Fifth Report of Discrimination, OhioHealth did not interview Justice.

157. In response to Wilson's Fifth Report of Discrimination, OhioHealth did not interview witnesses.

158. In response to Wilson's Fifth Report of Discrimination, OhioHealth did not get a written statement from Wilson.

159. In response to Wilson's Fifth Report of Discrimination, OhioHealth did not get a written statement from Justice.

160. In response to Wilson's Fifth Report of Discrimination, OhioHealth did not get a written statement from witnesses.

161. OhioHealth did not investigate Wilson's Fifth Report of Discrimination.

162. On August 17, 2023, refusing to continue to work in an environment hostile to LGBTQ+ workers, Wilson was constructively discharged on August 17, 2023 ("Constructive Discharge").

163. Between the unpunished harassment and the disparate treatment, Wilson was forced to resign due to the sexuality-based discrimination, harassment, and retaliation he faced at work.

164. As a direct and proximate result of OhioHealth's conduct, Wilson suffered and will continue to suffer damages.

## COUNT I: GENDER DISCRIMINATION IN VIOLATION OF TITLE VII
### (as against Defendant OhioHealth)

165. Wilson restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

166. Wilson is a member of a statutorily protected class based on his gender under Title VII.

167. OhioHealth treated Wilson differently than other similarly-situated employees based on his gender.

168. OhioHealth discriminated against Wilson on the basis of his gender throughout his employment with the company.

169. OhioHealth terminated Wilson's employment without just cause.

170. OhioHealth terminated Wilson's employment based on his gender.

171. OhioHealth's discrimination against Wilson based on his gender violates Title VII.

172. As a direct and proximate result of OhioHealth's conduct, Wilson suffered and will continue to suffer damages.

## COUNT II: GENDER DISCRIMINATION IN VIOLATION OF R.C. § 4112.02. *et. seq.*
### (as against Defendant OhioHealth)

173. Wilson restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

174. Wilson is a member of a statutorily protected class based on his gender under R.C. § 4112.02.

175. OhioHealth treated Wilson differently than other similarly-situated employees based on his gender.

176. OhioHealth discriminated against Wilson on the basis of his gender throughout his employment with the company.

177. OhioHealth terminated Wilson's employment without just cause.

178. OhioHealth terminated Wilson's employment based on his gender.

179. OhioHealth's discrimination against Wilson based on his gender violates R.C. § 4112.01 *et seq.*

180. As a direct and proximate result of OhioHealth's conduct, Wilson suffered and will continue to suffer damages.

## COUNT III: HOSTILE WORK ENVIRONMENT ON THE BASIS OF GENDER AND SEXUAL ORIENTATION DISCRIMINATION IN VIOLATION OF TITLE VII
### (as against Defendant OhioHealth)

181. Wilson restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

182. During his employment with OhioHealth, Wilson was subjected to offensive and harassing conduct by OhioHealth based on his gender and sexual orientation.

183. OhioHealth knew or should have known of the harassing conduct against Wilson by Justice.

184. OhioHealth knew or should have known of the harassing conduct against Wilson by Griffith.

185. OhioHealth knew or should have known of the harassing conduct against Wilson by Mollenkamp.

186. OhioHealth condoned, tolerated and ratified this harassing conduct.

187. This harassing conduct was severe and/or pervasive.

188. This harassing conduct was offensive to Wilson.

189. This harassing conduct interfered with Wilson's ability to perform his job duties.

190. OhioHealth's offensive and harassing conduct created a hostile and/or abusive work environment for Wilson.

191. OhioHealth's offensive and harassing conduct created a hostile and/or abusive work environment for the reasonable person similarly-situated to Wilson.

192. As a direct and proximate result of OhioHealth's conduct, Wilson suffered and will continue to suffer damages.

## COUNT IV: HOSTILE WORK ENVIRONMENT ON THE BASIS OF GENDER AND SEXUAL ORIENTATION DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et. seq.* (as against Defendant OhioHealth)

193. Wilson restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

194. During his employment with OhioHealth, Wilson was subjected to offensive and harassing conduct by OhioHealth based on his gender and sexual orientation.

195. OhioHealth knew or should have known of the harassing conduct against Wilson by Justice.

196. OhioHealth knew or should have known of the harassing conduct against Wilson by Griffith.

197. OhioHealth knew or should have known of the harassing conduct against Wilson by Mollenkamp.

198.    OhioHealth condoned, tolerated and ratified this harassing conduct.

199.    This harassing conduct was severe and/or pervasive.

200.    This harassing conduct was offensive to Wilson.

201.    This harassing conduct interfered with Wilson's ability to perform his job duties.

202.    OhioHealth's offensive and harassing conduct created a hostile and/or abusive work environment for Wilson.

203.    OhioHealth's offensive and harassing conduct created a hostile and/or abusive work environment for the reasonable person similarly-situated to Wilson.

204.    As a direct and proximate result of OhioHealth's conduct, Wilson suffered and will continue to suffer damages.

### COUNT V:  RETALIATION IN VIOLATION OF TITLE VII
### (as against Defendant OhioHealth)

205.    Wilson restates each and every prior paragraph of this complaint, as if it were fully restated herein.

206.    As a result of OhioHealth's discriminatory conduct described above, Wilson complained about the gender and sexual orientation discrimination he was experiencing.

207.    OhioHealth's actions were retaliatory in nature based on Wilson's opposition to the unlawful discriminatory conduct.

208.    Pursuant to Title VII, it is an unlawful discriminatory practice to discriminate in any manner against a person because that person has opposed an unlawful discriminatory practice as defined under Title VII.

209.    As a direct and proximate result of OhioHealth's conduct, Wilson suffered and will continue to suffer damages.

### COUNT VI:  RETALIATION IN VIOLATION OF R.C. § 4112.01 *et. seq.*

**(as against Defendant OhioHealth)**

210. Wilson restates each and every prior paragraph of this complaint, as if it were fully restated herein.

211. As a result of OhioHealth's discriminatory conduct described above, Wilson complained about the gender and sexual orientation discrimination he was experiencing.

212. OhioHealth's actions were retaliatory in nature based on Wilson's opposition to the unlawful discriminatory conduct.

213. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

214. As a direct and proximate result of OhioHealth's conduct, Wilson suffered and will continue to suffer damages.

## COUNT VII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
**(as against Defendant OhioHealth)**

215. Wilson restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

216. OhioHealth intended to cause Wilson emotional distress or knew that their acts or omissions would result in serious emotional distress to Wilson.

217. OhioHealth's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community.

218. As a direct and proximate result of OhioHealth's acts and omissions as set forth above, Wilson has suffered mental anguish of such a serious nature that no reasonable person could be expected to endure it.

219. As a direct and proximate result of OhioHealth's conduct and the resulting emotional distress, Wilson has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff Brian Wilson respectfully requests that this Honorable Court grant the following relief:

(a) Issue a permanent injunction:

(i) Requiring OhioHealth to abolish discrimination, harassment, and retaliation;

(ii) Requiring allocation of significant funding and trained staff to implement all changes within two years;

(iii) Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to investigate complaints promptly and/or take effective action to stop and deter prohibited personnel practices against employees;

(iv) Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

(v) Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) An award against Defendant of compensatory and monetary damages to compensate Wilson for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Wilson claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

_____

Trisha Breedlove (0095852)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
1103 Schrock Road, Suite 307
Columbus, Ohio 43229
Phone: (614) 556-4811
Fax:     (216) 291-5744
Email: trisha.breedlove@spitzlawfirm.com

*Attorneys for Plaintiff Brian Wilson*

**JURY DEMAND**

Plaintiff Brian Wilson demands a trial by jury by the maximum number of jurors permitted.

_____

Trisha Breedlove (0095852)

*Attorneys for Plaintiff Brian Wilson*